The second case in the morning call 2-12-7-6-8. People of the State of Illinois v. Charles Chamness. On behalf of the people, Ms. Kathleen Hamel. On behalf of the people, Mr. Barry W. Jacobs. And by the clock on the wall, we are running a little late, but the first case took us a little longer than anticipated. Luckily, you didn't have to travel as far as we did, so we are ready to proceed if you are. Thank you, Your Honor. Good morning. Good morning, Counsel. Kathleen Hamel for the defendant appellant, Charles Chamness. Mr. Chamness stands convicted of two counts of aggravated discharge of a firearm. We raise and erase two contentions of error that the State failed to prove the defendant discharged a firearm within the meaning of the statutory definition of the term discharge a firearm. And also that the court abused its discretion when it imposed a maximum extended term sentence of 30 years. This morning, I would like to stand in my brief as to the sentencing claim and address the first one only unless Your Honors have questions regarding the sentence. Actually, we do. Oh, you do. Well, in that case. With regard to the sentencing claim, this may be something we may ask the parties to brief this. In sentencing, the court considered the prior aggravated discharge for purposes of imposing an extended term sentence, correct? Yes. But then the court also referred to that prior offense where he had actually shot someone for purposes of giving him the lengthier sentence of 30 years, correct? Yes. It doesn't have to violate the principle or the proposition that once a prior conviction is used to impose an extended term sentence, the usefulness of that prior offense for sentencing purposes is exhausted. Yes. So you didn't argue that. I didn't. I overlooked that, I'm afraid. I apologize. With my colleagues' concurrence, I think we're going to ask you to file a supplemental brief. I would be happy to. Thank you for the opportunity. To get back to the first argument, the state failed to prove that the defendant, well, as it was charged in this case, aggravated discharge of a firearm is committed by someone who knowingly or intentionally discharges a firearm in the direction of another person or an occupied vehicle. Our focus is on the mean of the term discharges a firearm. Aggravated discharge of a firearm is not defined, or does not, the aggravated discharge of a firearm statute does not define the term discharge specifically. However, the general definition section of our criminal code does define the term personally discharged a firearm, which is practically the same language in this way. It says that a person is considered to have personally discharged a firearm when he knowingly and intentionally fires a firearm, causing the ammunition projectile to be forcibly expelled from the firearm. So our argument is that the definition of discharge of firearms that's set forth in the general definition section of our code applies to the aggravated discharge of a firearm statute. And then consequently, to sustain this defendant's convictions, the state had a burden to prove that the defendant caused an ammunition projectile to be forcefully expelled from the gun. So are you saying they had to find a bullet? Is that what you're saying? Or they had to present circumstantial evidence which would give rise to an inference that a bullet was fired. Or a hole in the car. That would be one thing. Or a cartridge at the scene. Now, assuming we accept the application of the general term to the specific statutory authority, you say we need something else. We have two people who, well, one person who was having a barbecue and saw the gun, heard something. There's another person who thought she heard firecrackers, and she comes out to see, I think, maybe not see the person, but see something. And then we have Mr. Jones who hears the gun go off several times, once directly in his direction and the second time just a click. Can't the jury take those three accounts into consideration in determining that there was a discharge? Well, the problem is that what those witnesses testified to was more than that. It was not simply that they saw him holding up a gun and then heard a gun fire. I do concede that it is conceivable that that kind of a description in the right sort of a case would be enough to give rise to a reasonable inference that the gun fired projectiles. The thing is here, what the circumstances that the witnesses described established that if bullets were fired from the gun, there should have been some sign that they had been fired. And this is because Mr. Jones testified that the gun was fired at this Purple Grand Am from a distance of about five feet and multiple times from a distance of five feet. And another witness, Chad Cavanaugh, I believe, said that he was six feet away from the car. And the farthest, the witness that places him the farthest away from the car is Arturo Garcia. He said that it was 15 to 20 feet away from the car. But even 15 to 20 feet away from a car firing multiple times, that he would have missed the car, not only missed the car, but not hit something. What if he's intentionally missing the car because he's sending a message to the people in the car? He doesn't intend to shoot them or the vehicle. He's conveying a message. Well, the thing is the state had the burden to prove that he did, that a projectile was expelled. Again. And so they, there has to be something. You understand my point is that people fire weapons all the time for purposes of warning shots. That happens all the time in cities, all over the country, on the streets. And a lot of times innocent bystanders get struck by those projectiles. So the fact that there's no bullet holes in the car, there's no shell casings because it's a revolver, does that mean that the jury could not have inferred from the evidence that the defendant was firing a gun? Well, they could infer that he was making a sound of a gunshot with something that resembled a gun. That's all the state proved here. It could have been a starter gun. It could have been a toy gun. There's a remarkable range of toy guns that are available on Amazon. It's shocking. That look precisely like real guns and that make the gun sound. The thing is the statutory definition puts a burden on the state to prove that the ammunition was expelled from the gun. But if they can't find any, that does not necessarily mean that it wasn't discharged. Well, it does mean, though, that they have to have something else that gives rise to a reasonable inference that it was. People's observations, especially Terry Jones. I mean, Terry Jones was very specific. He pointed it at me the first time I heard a shot or I heard a noise. The second time it clicked. Now, there is a significant difference between shot one and shot two in Terry Jones's mind. One fired, and I think the inference on the second shot is it didn't. Well, if they had, you know, perhaps some gun expert testimony here that might have explained that only a gun that fires projectiles would click when it misfired or something like that, then an inference might be drawn. But here what we have, in fact, with Terry Jones, we have him saying that from a distance of seven feet, a gun held at chest level aimed at him did not strike him. That gives rise to the single reasonable inference that the gun did not fire a bullet. And, again, this definition. But his description was before the jury, and why could they not reasonably infer that a projectile was discharged? Because they weren't given any evidence to draw that inference from. Because you don't have to have a loaded gun in order to have the thing that you are, you know, making the gunshot noise with expel a projectile. And because here we have all these witnesses who are describing circumstances where the defendant stands very close to this thing he's firing at, and it not only doesn't hit the thing he's firing at, but it doesn't hit a building or a street sign or anything else. The state went to the trouble of bringing in a witness who tracked down the Purple Grand Dam, a police officer who found the Grand Dam, and looked at it and verified that there was no gun damage done to the Grand Dam. So I think this is a situation where the state didn't focus on the requirement that it prove that the gun be discharged. They found that car, what, the next day or a couple days later? I don't know. It wasn't the same day. Yeah. Couldn't the jury also, you know, okay, you didn't see any damage. Maybe it got fixed. I mean, there are lots of scenarios that the jury could have considered. But that would be so speculative. That wouldn't be proof beyond a reasonable doubt. There has to be. Here what makes this case unusual is that the state went to such an extent to establish that it did not find any evidence that a projectile was emitted from the gun. And the fact that that often happens doesn't mean. I mean, sometimes people are, you know, say my friend stole my wallet, and the wallet is never found. And we don't end up prosecuting the guy for stealing the wallet because we don't have enough evidence that it actually happened. I'm sure we don't have evidence that an aggravated discharge of a firearm actually happened. What we have is that somebody made a noise with a thing that looks like a gun. A panel of my learned colleagues, and I'm not sure either one of these gentlemen were on it, decided a case, People v. Montes, later last year, I believe. And there they didn't even have a weapon. But that panel found that the jury could reasonably infer from the evidence of what people heard that there was an aggravated discharge of a firearm. There were a couple of things that Montes said. One of them was that the informant who said that he emptied all the cartridges out of the gun also said that there was a possibility that one cartridge remained inside of the gun. And so, you know, the jury had that before. The other thing was that this argument wasn't presented. In Montes, it was mostly about identification was the issue, and the jury was not directed, you know, nobody was directed to this question. But there was an issue, that's true. It wasn't specifically, but it was sufficiency of the evidence. If we look at your case in a similar way, it's a sufficiency of the evidence. You're saying if there is no evidence of any nature of the discharge, then the sound is not sufficient. Well, Montes seems to say we don't even need a weapon as long as we have somebody who testifies he saw the gun in Montes' hand and he heard a noise and he's familiar with gunshot, which is exactly what Terry Jones testified to. But it's a little more, because in Montes, the witness said he knew it was a real gun, because he actually pulled the clip out or whatever. He removed the bullets from it, possibly leaving one in the chamber. And so we really do have more information there. Here, for all we know, this snub-nosed .38 revolver was a starter pistol. I actually looked on Amazon. That's what they look like. There are starter pistols that look like snub-nosed .38s. It is a good possibility. And, you know, it's a matter of the state had the burden here, and they did not present evidence that would give rise to an inference that a projectile was emitted instead. It was rather a feature of this trial that they presented evidence that or they presented the fact, they proved of the fact that they did not have evidence that a projectile was emitted. And for these reasons, we are asking that Your Honor to reverse these convictions. Justice Brickett? Justice Pence? Thank you. You'll have an opportunity for rebuttal. Thank you. Mr. Jacobs. Good morning. I'm Barry Jacobs on behalf of the Appalachian people of the state of Illinois. May it please the court and counsel. In this case, Your Honors, this defendant's conduct clearly fell within the language and intent of the aggravated discharge statute. It's exactly the type of conduct that this statute seeks to prevent, and that is the random, senseless misuse of a firearm. And that's what the legislature was hoping to curb, that misuse, when it passed this statute. But the language, the actual title of the charge is aggravated discharge. Yes. Now, you have argued in your brief, I believe, that the general language and the definitions is not applicable to this specific statutory section. Could you review that for me, please? Yes. My position is, or the state's position is, is the plain language of this statute, which is the best indicator of legislative intent, is unambiguous and does not require this limitation or construction that a projectile be emitted. Be emitted or admitted, I'm sorry. Emitted, I'm sorry. Okay, thank you. And so it's my argument in my brief and here today that shooting any firearm, which is defined as a device designed to shoot a projectile, so shooting that most likely would result in the expulsion of a projectile, but the statute does not require that a projectile be emitted. Doesn't the common sense and lay definition of discharge of a firearm require that a projectile be expelled from the barrel? Isn't that the common understanding of the term? That is the common understanding, as I said. It commonly occurs, however, it's not required by the statute. And if we got into the general definition language, or getting into that, I guess, which was passed as part of the sentence add-on provisions, if we got into that, we could argue that the legislature could have, of course, at the same time, included this. In fact, the statement of intent has found in sharp and sharp rule that the legislature did not include aggravated discharge in this general definition. Could this definition, I'm just, you weren't here for a previous case, but we had a hypothesis and I'm forming one now in my head. Could this discharge as a firearm in the direction of another person mean that he pointed the gun and the projectile just fell? Would that be a discharge if it just fell? It's a defective gun. I don't know what the problem is. It just falls out. Would that be- I would suppose yes. And why? It meets the definition of the statute that- How? That it was pointed at? Are you equating discharge and pointing as the same thing? No, I'm equating shooting and discharge as the same thing. Okay. Well, how do we know it was shot? How do we know this gun was shot in this case? In this case, we have the testimony of at least three civilian witnesses who said they not only heard, they saw the defendant shooting this gun. The defendant's argument presumes that there had to be damage. There are many scenarios where there would not be damage. In fact, those were explained away by Detective Leninger who testified in this case why no casings would be found. He didn't, I believe it was he who located what they thought was the Grand Dam involved. But that was at least a day or two later. There was no damage. That's easily explained as the defendant did not intend to shoot. And, in fact, was found not guilty of the attempted murder, but did not intend to shoot the car, but shot as a warning shot, as Justice Burkett indicated, or over the car. And the same would apply to the shooting toward Terry Jones. I'm sorry? Yes. Terry Jones testified he shot in my direction, albeit he was very close. We don't know if at the last moment the defendant turned his hand, shot over his head, and was, you know, simply firing a warning shot. The evidence is strong in this case, and based on the Montez decision, it's apparent that a jury could reasonably infer that a weapon was, in fact, shot, or a firearm was shot. So where is the authority, where is your authority that says discharge means shot? If you're not going to use the general definition, which specific, I mean, we have Montez that said they heard. And the one person involved said he saw a gun, he knows what a gun sounds like, and that's what it sounded like. But are you using that for the authority that discharge means shoot, or do you have another case, or do you have something in specific? No, I'm relying on Montez for that. The shoot comes from the dictionary definition, the commonsense definition, that something is, I'm going to have to read it again, but I believe it is driven forth by explosion. And as I said, it would seem logical that a projectile would be, in the majority of cases, emitted. The state's position is simply that it's not required by this statute because of the plain and simple language. But regarding the quant of evidence, this is at least as great as the evidence that was presented in Montez, and that was a sufficiency of evidence case, maybe not specifically raised. In that case, the complaining witness testified in addition to the informant. The complaining witness testified he heard a pop. He saw the defendant some 20, 30 feet from him with what he thought was a gun, and that was sufficient to support the reasonable inference that a gun was in fact. And in Montez, wasn't there also a, I know there was the aggravated discharge, but there was another charge that he was also found guilty of, correct? Was he found guilty of either the murder or the attempt murder? I don't remember. I don't recall off the top of my head, Your Honor. All right. Can we turn to the sentencing issues? Yes, Your Honor. The question I ask counsel, are you familiar with the proposition that you cannot use a prior conviction for both? I am, and I'm happy to respond to. In this case, the state in its argument referred to the prior, not just to enhance the sentence to a class X, but also the facts of that prior offense were, which included striking the individual and that he initially got boot camp and that was cleared up. He got actually eight years. And then the state, based upon its argument, asked for 20 years. The trial court sentenced the defendant to 30 years and referenced the facts from the prior that was already used to enhance the sentence. Yes, I do. I do agree it's an issue. It's the state's belief and recollection that the court did reference that the defendant was given a break. Isn't that a problem? Well, potentially. It's my recollection that the court indicated that the defendant had been given a break and was considering that the defendant had not rehabilitated himself in the time since and was, again, charged over this offense. I'm not certain. My recollection is not that great. I take your honor for his word that the court, again, then considered it in imposing the 30-year sentence. And I'm happy to brief on that. I think you have to take a look at the transcript and both sides can enter an order. But I saw that as a problem in this case. I'm amenable to that. If there are no further questions, I would stand on my brief as well and thank the court. Thank you. Just a quick response to the use of the ordinary meanings of the words, because even if we did find that the definition for some reason did not apply to the statute, the ordinary meaning of the word discharge is to shoot. And the ordinary meaning of the word to shoot is to cause, as a gun or a bow, to project a missile. So the ordinary meaning of the word would still require the expulsion of a missile or a projectile. And that would still be a problem. I also, in response to the Montes case, I just want to emphasize that it wasn't only the complaining witness who testified for the state. It was also the informant who was inside of the car who had all kinds of, provided all sorts of information that supported a reasonable inference that a real gun was being used. He described the circumstances, the fact that the people in the car were out looking to shoot somebody, that this guy actually had a gun, that the gun, again, he removed the ammunition from the gun, but he didn't remove all of it possibly, et cetera. And so that really is a fairly different case from this case. For these reasons, we continue to ask that these convictions be reversed, and alternatively that they be given sentencing relief. And I'm more than happy to file a supplemental brief on that point. All right. In that regard, the record will be returned to Elgin by Monday at noon, so you'll have a few days to think about it. And then we will enter a written order, but based upon our conversation today, since it is limited to this issue, 14 days and 14 days to get that in. Is that fine with you, Mr. Jacobs? Yes. All right. Thank you. Thank you. Thank you very much for arguing it today, and we will take the matter under advisement when it is fully briefed. Thank you.